UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 2, 2011_____

CHARLES KUPFER,

                      Plaintiff,

      -against-

FEDERAL REPUBLIC OF GERMANY, et al,

                      Defendants.

------------------------------------------------------------x

07 Civ. 8589 (PAC)

<u>ORDER</u>

HONORABLE PAUL A. CROTTY, United States District Judge:

Defendants Norddeutsche Landesbank Girozentrale, HSH Nordbank AG, West LB AG, Landesbank Hessen-Thüringen Girozentrale (Helaba), and LBBW Landesbank Baden-Württemberg (collectively, "Defendants") move to dismiss Charles Kupfer's ("Plaintiff" or "Kupfer") action to recover unpaid principal and interest on 28 bearer bonds. Defendants maintain that they are entitled to judgment on the pleadings because Plaintiff cannot enforce the bonds without first complying with the Validation Law for German Foreign Currency Bonds, Aug. 25, 1952, BGBl.I, at 553 ("Validation Law"), incorporated into the 1953 Agreement Between the Government of the United States of America and the Federal Republic of Germany Concerning the Validation of German Dollar Bonds, Apr. 1, 1953, 4 U.S.T. 885 ("1953 Treaty"). Kupfer contends that the bonds are not subject to the Validation Law. Alternatively, Kupfer argues that any attempt to validate the bonds under the Validation Law would be futile, and so he asserts that he should not be forced to comply. The Second Circuit has already determined that the bonds in fact are subject to the Validation Law. Accordingly, Defendants' motion must be GRANTED, and Kupfer's claim is dismissed without prejudice.

# BACKGROUND[1]

Kupfer holds 28 German Provincial & Communal Bank Consolidated Agricultural Loan, Secured Sinking Fund Gold Bonds Series A (the "Agricultural Bonds").  He seeks to recover principal and interest under the bonds from the Defendant banks as successors in interest to the original issuing banks — a consortium of fourteen banks located in the territories later known as West Germany and East Germany.  64.5 percent of the debt on the bonds is attributable to banks that were located in the territory later known as East Germany, while 35.5 percent of the debt is attributable to banks located in what was later known as West Germany.  The bonds were listed on the New York Stock Exchange; they were marketed and sold in the United States; and they were payable on demand in the Borough of Manhattan, New York City. Mortimer Off Shore Services, Ltd. v. Federal Republic of Germany, 615 F.3d 97, 100-01 (2d Cir. 2010).  "Prior to World War II, the issuers repurchased many of these bonds for eventual retirement and submitted them to meet sinking fund and amortization requirements." Id. at 101. A number of the bonds were seized in Berlin by invading Soviet forces following World War II and re-circulated after the German surrender. Id.  These re-circulated bonds did not represent valid debt obligations, and posed a large problem for the countries involved. Id. This confusion eventually led to the enactment of the Validation Law.  Id.

After World War II, the Federal Republic of Germany ("FRG") entered into a series of treaties, in which they assumed the debt attributable to the former West German territory that remained under its control.  Id. at 101-03. The German Democratic Republic ("East Germany") was not a party to these agreements, and the FRG government did not assume any debt associated with that territory.  Id. at 102-103.  In order to differentiate the stolen bonds from the valid bonds, the West German government passed the Validation Law, which was incorporated by reference into the 1953 Treaty between the FRG,

---

[1] A more complete history of the bonds at issue and the Validation Law may be found in Mortimer Off Shore Services, Ltd. v. Federal Republic of Germany, 615 F.3d 97, 100-01 (2d Cir. 2010).

the United States, and various other nations. Id.  The Validation Law set out the procedures for bondholders to register and validate their bonds and listed the bonds to which it applied.  Id.

Kupfer claims that his family took possession of the bonds in 1942, and that the bonds have been in their possession ever since. (Am. Compl. ¶ 65-67.)  In November 1978, Kupfer attempted to redeem the bonds by sending photocopies of the bonds to the designated central agent for the bonds, Deutsche Landesbankenzentrale AG ("DLB").  In December, DLB responded that "For these bonds there exists no way of realization."  (Am. Compl. ¶ 77.)  In January 1979, Kupfer petitioned the Consulate General of what was then West Germany for assistance in redeeming the bonds.  The Consulate General reiterated the position taken by DLB, advising that "such bonds cannot be validated or utilized in any way." (Id. ¶ 78)

In 2007, Kupfer brought this action to enforce the bonds against the successors of the issuing banks and the FRG.[2]  A series of delays relating to Kupfer's original counsel followed, and Kupfer's amended complaint was submitted *pro se* in May 2009.  Kupfer has since obtained new counsel and, in March 2010, the court dismissed five of his six claims as time-barred — only the instant breach of contract claim survived.  On October 1, 2010, Defendants moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

Defendants argue that Kupfer did not follow the procedures outlined in the Validation Law and that, therefore, as a matter of law, the bonds are not enforceable at this time.  Kupfer argues in response that the validation procedures are inapplicable to his bonds and that, even if the Validation Law applies, his failure to comply does not bar this suit in light of the responses he received from DLB and the German Consulate General.  Specifically, Kupfer argues that he should be excused from compliance with the Validation Law because the result of a German validation proceeding, based upon the

---

[2] The FRG has never been served.

3

unequivocal denials and lack of reference to the validation procedures in the letters from DLB and the German Consulate General, is already a foregone conclusion.

Article 73 of the Validation Law states that the applicable venue for bonds with multiple issuers spread over multiple jurisdictions is to be determined by the location of the examining agency. As DLB is the examining agency for Kupfer's bonds, and as DLB is located in what was West Germany, [3] Defendants argue that the Validation Law applies to the entirety of Kupfer's bonds, regardless of the percentage of the debt attributable to the East German banks. In addition, Defendants argue that a validation attempt would not be futile. Under the Validation Law, Kupfer is entitled to a ruling by the German Chamber for the Settlement of Securities. The period for registration for Kupfer's bonds has long since expired, but Articles 51 and 52 of the Validation Law provides procedures for bondholders who failed to register their bonds within that specified period.

## LEGAL STANDARDS

**I. Standard of Review**

"The same standard applicable to [Federal Rule of Civil Procedure] 12(b)(6) motions to dismiss applies to [Federal Rule of Civil Procedure] 12(c) motions for judgment on the pleadings." Bank of New York v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir.2010) (citation omitted). That is, "judgment on the pleadings is appropriate only if, drawing all reasonable inferences in favor of the non-moving party, it is apparent from the pleadings that the moving party is entitled to judgment as a matter of law." Aktiebolag v. Kremers Urban Development Co., No. 99 Civ. 8928, 2000 WL 257125 (S.D.N.Y. Mar. 8, 2000); O'Connell v. Massanari, No. 99 Civ. 4987, 2001 WL 611333 (S.D.N.Y. June 4, 2001) ("[A] court

---

[3] The Court takes judicial notice of the January 28, 1953 German Federal Gazette, which designates DLB, in West Berlin, as the Examining Agency for the bonds. (Def. Repl. Mem., Ex. 1.) See Roberts v. Babkiewicz, 582 F.3d 418, 419 (2d Cir. 2009).

must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant.").

## II. The *Mortimer* Decision

On July 26, 2010, the Second Circuit decided Mortimer Off Shore Services, Ltd. v. Federal Republic of Germany, 615 F.3d 97 (2d Cir. 2010), dealing with the same Agricultural Bonds that Kupfer seeks to enforce. The District Court dismissed Mortimer's claims regarding the debt attributable to the East German territory for lack of subject matter jurisdiction and dismissed claims regarding the debt attributable to the West German territory for noncompliance with the Validation Law. Mortimer Off Shore Services, Ltd. v. Federal Republic of Germany, No. 05 Civ. 10669, 2007 WL 2822214 (S.D.N.Y. Sept. 27, 2007). The Second Circuit affirmed, holding that a plaintiff "can only enforce bonds covered by the Validation Law after complying with the validation procedures and explaining why any delay in doing so is excusable." Mortimer, 615 F.3d at 117.

## DISCUSSION

### I. The Validation Law Applies to Kupfer's Bonds

In Mortimer, the Second Circuit held that the Validation Law is still in effect and that it applies specifically to the Agricultural Bonds at issue here.[4] Mortimer, 615 F.3d at 114-15. Whatever support Kupfer seeks from World Holdings, LLC v. The Federal Republic of Germany, No. 08-20198-CIV (S.D.Fla), is misplaced. The Second Circuit has held that compliance with the Validation Law is necessary in order to enforce Agricultural Bonds. Mortimer, 615 F.3d at 117 (holding that a bondholder can only enforce bonds covered by the Validation law after complying with the validation procedure).

---

[4] The fact that the defendant in Mortimer was the FRG is of no moment. There is no logical reason that the Validation Law should apply any differently depending on the party from which a bondholder is seeking redemption.

Further, the bonds at issue in <u>World Holdings</u> are "Young and Dawes" bonds, not the Agricultural Bonds in <u>Mortimer</u>, or here.

Where a bond has multiple issuers, Article 73 of the Validation Law specifies that the jurisdiction of the bond is determined by the seat of the designated examining agency. The bonds in question are clearly "West German."[5] As such, Kupfer's argument that, even if the West German portion of the bond is subject to the Validation Law, the East German portion is not, is unavailing. Regardless of the percentage of the debt attributable to the East German banks, the bonds at issue are subject to the Validation Law because the examining agency was located in West Germany. Since Kupfer has not complied with the Validation Law, the Court must grant Defendants' motion.

**II. Kupfer Has Not Complied With the Validation Law**

Kupfer's correspondence with DLB and the German Consulate General do not constitute compliance with the procedures outlined in the Validation Law.  In addition, Kupfer's alternative argument that he should not be bound to comply with the validation procedures is unavailing.  While the letter from DLB is certainly indicative of its position relating to Kupfer's bonds, it is the German Chamber for the Settlement of Securities who must take the next action. <u>Mortimer</u>, 615 F.3d at 116-117.  As the Defendant banks concede, if the German court does not validate the bonds under Article 51 of the Validation Law, and if, under Article 52(1) of the Validation Law, Kupfer obtains a ruling from the German court that his bonds would have been validated if timely registered and that the delay was not due to Kupfer's gross negligence, Kupfer may then bring an action seeking redemption of the bonds from the Defendant banks. <u>See</u> Val. Law. Art. 52(1).  Stated differently, "Article 52(2)[] states that the right to compensation for non-validated bonds created by Article 52 'can be asserted only *after it has*

---

[5] In addition, the bonds at issue here are expressly scheduled in the Validation Law.  (Validation Law, Schedule C.IV.)

*been finally adjudicated* that the conditions' set forth in Article 52(1) [of the Validation Law] have been met. . . . Article 52(2) further states that '[e]xclusive jurisdiction to make such an adjudication shall rest with the Chamber of Settlement of Securities of the district in which the issuer has its seat.'" Mortimer, 615 F.3d at 116 (citing Val. Law Art. 52) (emphasis in Mortimer).

Accordingly, Kupfer "can only enforce bonds covered by the Validation Law after complying with the validation procedures and explaining why any delay in doing so is excusable." Mortimer, 615 F.3d at 117. As Kupfer's bonds are undoubtedly subject to the Validation Law, and as Kupfer has clearly not complied with the validation procedures, Kupfer's claim must be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings is GRANTED. Plaintiff's case is, therefore, dismissed without prejudice. The Clerk of the Court is directed to enter judgment and close this case.

Dated: New York, New York
       May 2, 2011

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge